```
UNITED STATES DISTRICT COURT              FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JOSE CLEMENTE DE LA CRUZ,                  :
                                           :
                  Plaintiff,               :         MEMORANDUM
                                           :         AND ORDER
                                           :
       -against-                           :         06 CV 3639 (JG)
                                           :
MICHAEL J. ASTRUE,                         :
Commissioner of Social Security,           :
                                           :
                  Defendant.               :
-------------------------------------------------------X
```

A P P E A R A N C E S:

       JOSE CLEMENTE DE LA CRUZ
           37-26 65th Street
           Apt. 4-G
           Woodside, NY 11377
           Plaintiff *pro se*

       ROSLYNN R. MAUSKOPF
           United States Attorney
           Eastern District of New York
           147 Pierrepont Street
           Brooklyn, NY 11201
       By:    Assistant United States Attorney Karen Callahan
           Attorney for Defendant

JOHN GLEESON, United States District Judge:

       Jose Clemente de la Cruz brings this action *pro se* pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), seeking review of the Commissioner's final decision that he is not entitled to disability insurance or Supplemental Security Income ("SSI") benefits under the Social Security Act. The Commissioner moves pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings. De la Cruz belatedly submitted by facsimile to the Court a very brief written opposition to the motion, which I provided to the Commissioner at oral argument on April 20,

2007. For the reasons set forth below, the motion is denied and the case is remanded for further consideration of the treating physician rule and further development of the record.

## BACKGROUND

De la Cruz, who is now 49 years old, had a very limited education in the Dominican Republic, his native country. R. 31-32. He speaks little English. He came to this country in 1978. R. 32. For an unspecified period, he worked as a dishwasher. R. 91. Beginning in 1998, he earned $8.00 per hour receiving, carrying, and stocking deliveries at a restaurant. R. 93. He inspected the deliveries and carried many boxes from the first floor to the second floor. R. 94. The boxes weighed up to 100 pounds, and frequently weighed more than 50 pounds. *Id.*

On April 26, 2003, de la Cruz, who stands five feet six inches tall and weighs 240 pounds, R. 92, was in a car accident. R. 120. For a time after the accident, he tried to work and he was assigned a helper who assisting in lifting boxes. R. 93. But he stopped working on October 17, 2003, and he claims to have been disabled as of that date due to pain in his neck, back, left arm, hands, and left knee. R. 27-28. De la Cruz testified that he endures serious pain. For example, he characterized his pain while bending down as a nine or ten out of ten. R. 28. He also testified that the pain affects his sleep -- for relief during the night he sometimes has to lie on the floor. R. 29-30. He claimed he can sit for thirty minutes, but then he must walk around his apartment before he can sit back down, and he can feed himself and do light grocery shopping, but he cannot prepare food or clean his apartment because of the pain in his hands. R. 28-29. De la Cruz was prescribed ibuprofen, a back brace, and a cane for the pain. R. 30-31.

On April 26, 2003, following the car accident, de la Cruz went to an emergency room complaining of serious neck pain. R. 136. The records of an examination report reflect that he had full range of motion in his extremities, intact sensation, and full motor strength. R. 141. A CT scan of his cervical spine showed no abnormality in the cervical spine or adjacent soft tissue, but an x-ray illustrated some cervical straightening that was taken to possibly reflect a muscular spasm. R. 139-40. De la Cruz was also diagnosed with contusions in the neck and back. R. 141.

On May 1, 2003, de la Cruz began chiropractic treatment with Dr. Chad Greenshner. R. 251-57. He complained of, among other things, constant moderate headaches and constant moderate pain in the neck, mid-back, and lower back. R. 251-52. The pain was intensified by all ranges of motion, and radiated out to the forearms, hands, hips, buttocks, and legs. R. 252. Dr. Greenshner noted moderate tenderness and spasm in the cervical, thoracic, and lumbar spine areas, with pain upon extreme motion. R. 252-55. Greenshner recommended no heavy work until further notice. R. 257. He continued de la Cruz's treatment until April 2004, and the doctor's notations indicate that de la Cruz reported consistent pain over this time (eight on a scale of ten). R. 167-84.

On May 6, 2003, de la Cruz was first evaluated by Dr. Mark Kostin. R. 242. He complained of, among other things, constant dull pain (a five out of ten) and restricted motion in his neck, numbness and tingling in his fingers, pain in his left knee and right and left upper arms, and pain and spasm in his lower back. *Id.* Upon comprehensive examination, including numerous orthopedic range of motion tests and a neurological examination, Dr. Kostin concluded that de la Cruz had cervical and lumbar sprain and strain, myofascial pain syndrome,

3

left knee pain, anxiety, and stress. R. 245. He began to treat de la Cruz with physical therapy for the neck and back, including hot packs, electrical stimulation, therapeutic massage, and range of motion exercises, in addition to Naproxen and Flexeril. R. 249.

On May 8, 2003, in de la Cruz's initial evaluation by Rizkalla Youssef, a physical therapist, de la Cruz reported neck, lower-back, and left-knee pain; headaches; and dizziness, among other maladies. R. 262. Youssef reported that de la Cruz had difficulty bending, squatting, sustaining standing or sitting positions for prolonged periods of time, and lifting or carrying heavy objects. R. 263.

On June 10, 2003, in a follow-up with Dr. Kostin, de la Cruz reported improvement in his neck pain and stiffness but a worsening of the back and knee pain -- now an eight out of ten. R. 189. An MRI conducted that day showed muscular spasm of the cervical spine, cervical spondylosis, and bulging annuli from the C2-3 through the C7-T1 levels. R. 146, 223. Another MRI the following day showed intrasubstance change of menisci and non-specific intra-articular joint fluid in the left knee. R. 145, 221. In range of motion and manual muscle testing performed by Dr. Kostin on June 16, 2003, Kostin concluded that de la Cruz had a 32% "final whole person impairment." R. 164. In an August 12, 2003 follow-up, de la Cruz complained of intermittent sharp pain in the neck, left knee, and lower back, exacerbated by going up and down stairs, pulling, lifting, prolonged standing, getting up from a sitting position, and the weather. R. 185. Dr. Kostin's orthopedic examination indicated normal ranges of motion, but muscle spasms in the upper trapezius and paraspinal muscles. R. 186. He recommended continued physical therapy and medication. R. 188.

On June 23, 2003, de la Cruz was examined by Dr. Choong Kwon Kim, a rehabilitation medicine specialist. R. 207-14. After examination, Dr. Kim diagnosed, among other things, traumatic interval derangement of the cervical and lumbosacral spines with sprain and strain, traumatic cervical and lumbar radiculopathy with radicular pain into the right arm and right buttock (subsequent neurological testing was consistent with radiculopathy, *see* R. 210-11), traumatic myofascial pain dysfunction syndrome, post-traumatic cerebral concussion syndrome, lateral epicondylitis, and contusion and sprain of the left knee. R. 208-09. Dr. Kim found de la Cruz partially disabled for his work for an undetermined period of time. R. 209.

On June 25, 2003, another MRI of de la Cruz's lumbar spine showed muscular spasm, multilevel dehydration of the vertebral interspaces, bulging annuli at the L1-2 through L4-5 levels and a left paracentral bulge at L5-S1 with neural foraminal narrowing. R. 144.

On July 13, 2004, de la Cruz applied for disability insurance or SSI benefits for cervical and lumbosacral strain; pain in his neck, back, right elbow, and left knee; and numbness in his feet. R. 38, 81.

On September 30, 2004, Dr. Kyung Seo examined de la Cruz consultatively. R. 271. De la Cruz complained of "constant" "sharp" neck pain radiating down the right arm and lower back area, similar lower back pain radiating down the right leg to the right knee with accompanying cramps in the back muscles, and left knee joint pain. *Id.* He reported difficulty standing and walking, particularly walking up and down stairs. *Id.* De la Cruz was taking ibuprofen and Vicodin at the time. *Id.* Dr. Seo's physical examination revealed "no difficulty" standing up or getting on or off the examination table, with normal fine motor activity in both hands. *Id.* After an extensive examination, Seo's impression was "(1) Chronic muscle strain of

the paraspinal muscles of the neck," and "(2) Lower back derangement, probably degenerative spondylosis and degenerative disk disease." Supp. R. 2. Dr. Seo concluded that "due to muscle spasms of the neck and lower back with rigid spine and internal derangement of the left knee," sitting, standing, walking, bending, lifting, and carrying heavy objects were "slightly limited." *Id.*

De la Cruz's application was denied initially on November 9, 2004. R. 38.

On March 15, 2006, Dr. Saulius Skeivys completed a document entitled "Physician's Report for Claim of Disability Due to Physical Impairment," based upon his evaluations of de la Cruz on December 14, 2004, April 4, 2005, and March 15, 2006. R. 272-77. He diagnosed, among other things, "multiple pains" in the left knee, shoulders, and lumbosacral region. R. 273. De la Cruz reported that he was taking ibuprofen every other day and that he lay on the floor for up to 45 minutes four to five times a day because of pain in his back. R. 273-74. Dr. Skeivys noted "as per patient history" that de la Cruz could sit continuously for up to 30 minutes, stand continuously for up to 60 minutes, walk continuously for up to 15 minutes, and that he could, during an eight-hour workday, sit for a total of three hours, stand for a total of four hours, and walk for a total of one hour, and that "as per patient," he can lift and carry up to five pounds "frequently" and from six to 10 pounds "occasionally" but never more. R. 275.

On March 21, 2006, Dr. Jerry Weissmann completed a similar report, based on his first examination of de la Cruz on June 8, 2005 and periodic visits thereafter. R. 280. Weissmann reported that de la Cruz complained of pain in the cervical and lumbar spine, "guard[ed]" his motion in those areas, and had tenderness upon palpation of the left knee. *Id.* He noted that de la Cruz had to lie down during the day for 45 minutes on a firm surface. R.

281. De la Cruz's ability to sit, stand, and walk was assessed "per patient tolerance," but Weissmann noted that de la Cruz could lift and carry up to five pounds "continuously," from six to 10 pounds "frequently," and lift from 11 to 25 pounds or carry from 11 to 20 pounds "occasionally" (never more). R. 283.

On de la Cruz's request for reconsideration of the denial of his application, an administrative law judge ("ALJ") held a de novo hearing on March 29, 2006, at which de la Cruz appeared with counsel. R. 25-37. On April 28, 2006, the ALJ denied the claim in an opinion, holding that de la Cruz "retains the residual functional capacity for light work." R. 20. In so concluding, the ALJ noted that de la Cruz had complained of neck and lower-back pain after his accident, and briefly mentioned the June 2003 MRI results and that his range of motion was found normal (presumably by Dr. Kostin) on August 12, 2003. R. 19. The ALJ found de la Cruz's own statements about his pain "not entirely credible" in light of his treatment only with ibuprofen, his practice of walking to the store and to medical appointments, his practice of riding the bus or train, and the lack of objective evidence for the pain he claimed in his right elbow or the numbness in his feet. *Id.* The ALJ gave "[c]ontrolling weight" to the September 30, 2004 report of Dr. Seo and the March 21, 2006 report of Dr. Weissman. R. 20. He noted that Dr. Seo "observed the claimant to move about normally except for only being able to squat halfway," found "no sensory or strength deficit," believed "[t]he fine motor activity of [de la Cruz's] hands was normal," and found that "[s]itting straight leg raising was negative bilaterally." *Id.* He further noted that "Dr. Weissmann reported that the claimant could travel alone by bus and subway and he could lift and carry 20 pounds occasionally and 10 pounds frequently." *Id.* The ALJ gave "no significant weight" to the March 15, 2006 opinion of Dr. Skeivys that de la Cruz

7

"was limited to maximum lifting/carrying of 10 pounds and standing/walking of 5 hours/day," on the rationale that the report's analysis did not support those "severe limitations." *Id.* In particular, the ALJ noted that Dr. Skeivys's report found de la Cruz "had a normal gait, no muscle atrophy and flexion/extension of his neck and back appeared unrestricted," and, in addition, found that de la Cruz took only ibuprofen every other day for pain, could use hands and feet for repetitive motion, and could travel alone daily by bus and subway. *Id.*

The ALJ considered no other medical opinions. The Appeals Council denied de la Cruz's request for review on June 29, 2006. This appeal followed.

DISCUSSION

The government argues that the pleadings illustrate that the Commissioner's decision was not legally erroneous and was supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) ("A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." (internal quotation marks omitted)). I conclude that the ALJ committed legal error. I therefore do not consider whether the decision was supported by substantial evidence.

At issue is whether de la Cruz is "disabled" within the meaning of the Social Security Act. 42 U.S.C. §§ 423(a), (d). In making this determination, pursuant to agency regulations, *see* 20 C.F.R. §§ 404.1520, the Commissioner undertakes a five-step inquiry.

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical capacity to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

*Shaw*, 221 F.3d at 132; *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

The ALJ determined at step 5 that de la Cruz was not disabled, holding that de la Cruz retained the residual functional capacity to do light work, and although "[t]he exertional demands of [de la Cruz's] past relevant work exceed [that] residual functional capacity," de la Cruz could perform other jobs existing in significant numbers in the national economy. R. 20-22.

In concluding that de la Cruz retained the residual functional capacity for light work, the ALJ was required to consider four factors: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam) (quotation marks omitted). With respect to the second factor, regulations require the ALJ to give "controlling weight" to the medical opinion of de la Cruz's treating physician, provided "it is well supported by the medical findings and not inconsistent with other substantial record evidence." *Shaw*, 221

9

F.3d at 134; *see* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Halloran v. Barnhart*, 362 F.3d 28, 31-33 (2d Cir. 2004); *Schaal v. Apfel*, 134 F.3d 496, 503-04 (2d Cir. 1998).

Moreover, when the ALJ does not accord the treating physician's opinion controlling weight, he or she must "give good reasons in [the] notice of determination or decision for the weight [he or she] gives" it, *Clark v. Cmm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998), and articulate what weight that is, *see Botta v. Barnhart*, 475 F. Supp. 2d 174, 187 (E.D.N.Y. 2007). Failure to do so is a ground for remand. *Schaal*, 134 F.3d at 503-04. In determining the non-controlling level of deference given, the ALJ must consider (1) the "length of the treatment relationship and the frequency of examination," as well as the "nature and extent of the treatment relationship;" (2) the medical evidence supporting the opinion; (3) whether the opinion is consistent with the record as a whole; (4) whether the opinion was that of a specialist; and (5) other probative factors. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Halloran*, 362 F.3d at 32.

The ALJ's opinion does not reflect a proper application of the treating physician rule. First, the decision gives inadequate attention to the medical opinions of Kim and Kostin. The ALJ indirectly refers to de la Cruz's August 12, 2003 follow-up visit to Kostin, mentioning that "[t]he range of motion of his cervical and lumbosacral spine was noted to be normal," R. 19, but neglects to mention that the same evaluation revealed muscle spasms in the upper trapezius and paraspinal muscles, R. 185, and that an evaluation by Kostin less than a month earlier led that doctor to conclude de la Cruz had a 32% "final whole person impairment." R. 164. Similarly, no mention is made of Kim, the rehabilitation medicine specialist, who diagnosed de la Cruz on June 23, 2003 with, among other things, traumatic interval derangement of the

10

cervical and lumbosacral spines, traumatic cervical and lumbar radiculopathy with radicular pain into the right arm and right buttock, and traumatic myofascial pain dysfunction syndrome, and who was of the opinion that de la Cruz was, for an indeterminate time, partially disabled. R. 208-09. The ALJ's failure to adequately note the opinions of these physicians, articulate the weight it gave to those opinions, or set forth the justification for that weight, was legal error.[1] That error alone would be a basis for remand.

Second, the decision does not mention that the opinions of Seo and Weissmann were inconsistent with the earlier medical opinions of Kim and Kostin. This too was error. The ALJ observed that Seo found de la Cruz "to move about normally except for only being able to squat halfway," found "no sensory or strength deficit," believed "[t]he fine motor activity of [de la Cruz's] hands was normal," and found that "[s]itting straight leg raising was negative bilaterally." R. 20. The ALJ also noted that "Dr. Weissmann reported that the claimant could travel alone by bus and subway and he could lift and carry 20 pounds occasionally and 10 pounds frequently." *Id.* But the ALJ never reconciled those opinions with the earlier opinion of Kim that de la Cruz's pain rendered him partially disabled, or the earlier opinion of Kostin that de la Cruz had significant final whole person impairment. The Commissioner suggested at oral argument that Weissmann's 2006 opinion remedies the ALJ's omission of the earlier opinions, but I disagree. The omission of earlier inconsistent opinions leads a reviewing court to wonder why the Weissmann and Seo opinions warranted controlling weight. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Furthermore, as the Commissioner acknowledged at oral

---

[1] In addition, the decision reports that de la Cruz "went to chiropractors for treatment," but does not mention that Dr. Greenshner reported consistent pain, eight on a scale of ten, over the course of his treatment of de la Cruz from 2003 to 2004. The decision also omits the report of Dr. Yousseff, the physical therapist, that de la Cruz had difficulty with bending, standing, sitting for prolong times.

11

argument, Weissmann's opinion is not inconsistent with a period of disability lasting from 2003 to 2006.

Third, the ALJ erred in discounting the 2006 opinion of Seivys without further development of the administrative record. The ALJ determined that Seivys's findings did not support the conclusion that de la Cruz had "severe limitations" on his movement. R. 20. But the ALJ had a duty to request additional information to develop the record before giving up on Seivys entirely. *See Clark*, 143 F.3d at 118. The failure to do so is an independent basis for remand.

Because the Commissioner will consider a richer mix of information on remand, he will be obliged to reassess his finding that de la Cruz's testimony about his impairment and its effects was "not entirely credible." R. 19. The ALJ's present explanation makes the adverse credibility determination something of a *non sequitur*. That de la Cruz "only takes Ipubrofen for pain," "walks to the store and to his medical appointments," and can ride buses and trains, *id.*, is not inconsistent with his testimony about his claimed impairment and its impact on his ability to work. People can do all of those things, and take only ibuprofen, while still suffering the disabling pain and other symptoms de la Cruz described at the hearing. *See* R. 27-28. If on remand the ALJ's credibility assessment is the same, he should provide a more cogent explanation why he rejects as incredible de la Cruz's sworn testimony.

## CONCLUSION

For the reasons set forth above, I conclude the Commissioner has applied an improper legal standard, and I therefore remand this case for further proceedings consistent with this opinion.

So ordered.


John Gleeson, U.S.D.J.


Dated: Brooklyn, New York
      August 22, 2007